NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

SHELLY C., )
 )  Supreme Court No. S-17695
Appellant, )
 )  Superior Court No. 4FA-17-00224 CN
v. )
 )  MEMORANDUM OPINION
JONAH C. and STATE OF ALASKA, )      AND JUDGMENT*
DEPARTMENT OF HEALTH & )
SOCIAL SERVICES, OFFICE OF )  No. 1797 – October 21, 2020
CHILDREN'S SERVICES, )
 )
Appellees. )
 )

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Thomas I. Temple, Judge.

Appearances: Shelly C., pro se, Tooele, Utah, Appellant. Renee McFarland, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Appellee Jonah C. Kimberly D. Rodgers, Assistant Attorney General, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for Appellee State of Alaska, Department of Health & Social Services, Office of Children's Services. Nikole V. Schick, Assistant Public Advocate, Fairbanks, and James Stinson, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices.

---

\* Entered under Alaska Appellate Rule 214.

## I.   INTRODUCTION

The Office of Children's Services (OCS) denied a request to place a child in need of aid with a grandmother whose background check revealed evidence of past child abuse and neglect; the superior court approved OCS's position, and the grandmother appeals the court's decision.  The grandmother argues that the superior court should have allowed her more time to address the issues with her background check.  We conclude that the superior court did not abuse its discretion in prioritizing the child's adoption by her long-term foster parents over continued pursuit of a potential relative placement, and we therefore affirm.

## II.   FACTS AND PROCEEDINGS

Mia C. is the child of Kirsten F. and Jonah C.[1]  In December 2017 OCS petitioned to remove then three-year-old Mia and her half-siblings from their mother's care and adjudicate them as children in need of aid under AS 47.10.011(2).[2]  The children were placed in the same non-relative family's foster home.  In March 2019 OCS petitioned for termination of parental rights, and trial was ultimately scheduled to begin in December.

When Mia came into foster care she did not have a relationship with Jonah, who was incarcerated, or her paternal grandmother, Shelly, who resides in Utah.  Jonah desired that Mia be placed with his mother, and Shelly asked OCS to submit a request

---

[1]   We use pseudonyms to protect the family's privacy.

[2]   The trial court may find a child to be in need of aid if "a parent, guardian, or custodian is incarcerated, the other parent is absent or has committed conduct or created conditions that cause the child to be a child in need of aid under this chapter, and the incarcerated parent has not made adequate arrangements for the child." AS 47.10.011(2).

under the Interstate Compact on the Placement of Children (ICPC)[3] to place Mia with her in Utah.

In response to OCS's ICPC request, the Utah Department of Human Services informed Shelly that she and another adult household member, her son Michael, were both listed in the state child abuse and neglect registry as having been subject to a "supported finding of a severe type of child abuse or neglect" and that "additional background screening information [was] needed."

In November, the guardian ad litem (GAL) filed a report noting Shelly's request that Mia be placed with her in Utah. The GAL recommended not delaying Mia's permanency plan because Mia and her half-siblings had lived with her current foster parents for nearly two years and the foster parents appeared willing to proceed with adoption.

A few days later Shelly requested a review hearing. She wrote that she was "now clear to take [a] background screening" and was "asking to resubmit [the] ICPC." She attached a letter stating that her child abuse finding had been incorrectly classified as "severe" when in fact it had been a "non-severe" finding, which, if appropriately classified, would not have shown up on her background check. Michael also requested a review hearing. He wrote that the records prompting Utah to reject Shelly as a placement had been based on "false allegations" that they "need time to have cleared."

In early December, Kirsten filed a consent to adoption, indicating that she would relinquish her parental rights if Mia and her half-siblings could be adopted by their foster parents. The following day the superior court held a hearing regarding Shelly's contested placement denial. The court heard from Shelly, OCS, the GAL, and Jonah's attorney.

---

[3]     AS 47.70.010-.080.

Shelly testified that Utah's rejection had been based on erroneously classified substantiated findings that she had neglected one of her children in 1995 and on false allegations that Michael had sexually abused other children while in a group home and foster care as a teenager. She also described Michael's developmental delays and reported that he had actually been a victim of childhood sexual abuse, not a perpetrator, and asserted that she could address this issue in the Utah juvenile courts.

Shelly submitted an exhibit to the court as documentation that she would now be able to pass a background check. This document appears to be a filing from a Utah Assistant Attorney General acknowledging that Shelly's 1995 supported finding had been previously misclassified as severe, that it had been properly reclassified as nonsevere, and that it would therefore "no longer show up in a background screen." But the attorney also asserts that Shelly had a 1996 supported finding on a related neglect and dependency adjudication which she is barred from challenging.

The superior court concluded that Shelly would have to take further action in Utah to ensure that her household could pass the ICPC background check. The court thus denied Shelly's request for a relative placement:

> [I]f Utah comes to a different conclusion on the ICPC and they're no longer denying their involvement due to a background clearance, then [Shelly] can file something with the court reopening this issue. Assuming that it's not too late and there's still an opportunity for this court to get involved in that decision, then we can relook at it. But at this point, the only information the Court has is that Utah is denying to get involved.

Shelly appeals the denial of her request for placement.

## III.  DISCUSSION

Alaska Statute 47.14.100(e)(3)(A) provides that "[w]hen a child is removed from a parent's home, OCS is required to place the child with an adult family member,

absent clear and convincing evidence of good cause to the contrary."[4]  The superior court has broad discretion to affirm or reject OCS's placement.  "We review the superior court's finding of good cause to deviate from . . . placement preferences for an abuse of discretion."[5]

Shelly established her entitlement to a preference placement with her testimony that she is Mia's grandmother.[6]  But OCS presented documentation that Utah had denied the request for an ICPC placement, making it "not legally possible" to place Mia with Shelly.

Under the ICPC, a "sending agency" (e.g. OCS) may not send a child to a "receiving state," such as Utah, until the receiving state verifies the proposal and any necessary documentation.[7]  The child may not be sent to the receiving state until the receiving state notifies the sending state that the proposed placement "does not appear to be contrary to the interests of the child."[8]

In this case there is no dispute that Utah denied OCS's ICPC request based on the background check referenced in Shelly's hearing request.  OCS therefore could not legally place Mia with Shelly.  The superior court's decision recognizing this hurdle cannot be an abuse of discretion.

---

[4]  *Shirley M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 342 P.3d 1233, 1243 (Alaska 2015).

[5]  *Id.* at 1239 (citing *Native Vill. of Tununak v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 303 P.3d 431, 440 (Alaska 2013)).

[6]  AS 47.14.100(t)(1) (incorporating AS 47.10.990(1)(A)).

[7]  AS 47.70.010, art. III(a)-(c).

[8]  AS 47.70.010, art. III(d).

On appeal Shelly also asserts that the superior court should have ordered OCS to resubmit the ICPC request. But the court could reasonably conclude that the result of such a request remained doubtful. Instead of requiring OCS to submit another ICPC request, the court required Shelly to resubmit her request for a relative placement when she was able to clear up the background check. We cannot say that this approach was an abuse of discretion.

## IV.   CONCLUSION

The superior court's judgment is AFFIRMED.